(v) that we will make available such evidence of verification of identity to the Fund, the Administrator or as may be required by any law enforcement or regulatory authority.

(vi) that we have to the best of our knowledge and ability, confirmed that none of persons for whom we are acting as nominee is named on the lists of prohibited countries, territories, entities and individuals maintained by the US Treasury Department's Office of Foreign Assets Control and the Commission of the European Union.

Yours truly

_____
Authorised Signatory

14

FORM E

| WHERE THE SUBSCRIBER IS A TRUST |
| --- |

This section must be completed and the required documents provided by every trust subscribing for shares in the fund. The Trustee of the trust must complete and satisfy either E1 or E2.

Where the Subscriber is a trust
(1.)   complete the declaration below and
(2.)   provide the documents requested.

DECLARATION:

I/We, [                                    ] Trustees of the above named subscriber, hereby declare that the subscriber is a Trust authorised under the Trust Deed/Declaration of Trust dated the _____ (date) in _____ (country) with the power to make this subscription. I/We further declare that the subscription is being made only on behalf of the Trust and that the following persons are all trustees of the Trust:

(1)      Name                   _____

Residential Address    _____

Business Address       _____

Occupation             _____

Date of Birth          _____


(2)      Name                   _____

Residential Address    _____

Business Address       _____

Occupation             _____

Date of Birth          _____


(3)      Name                   _____

15

Residential Address _____

Business Address _____

Occupation _____

Date of Birth _____

Where there are further Trustees, please list details on a separate page

I/We further agree to notify the Administrator of the Fund of any changes in trustees arising whilst the Trust maintains an investment in the Fund.

Signed: _____ Trustee

_____ *(print name)*

Date: _____

IMPORTANT: All of the following documentation is also required:

☐ Certified copy of Trust Deed / Declaration of Trust.

☐ Copy of the authorised signatory list of the Trustee.

☐ List of the beneficiaries – names and addresses – of the Trust and certified copies of passports of those beneficiaries.

☐ Certified copy of signed identification papers such as a passport or drivers licence and an original or certified copy of a recent bank statement or utility bill or a letter of confirmation of the name and address of the settlor of the Trust from a financial institution.*

* If the settlor of the Trust is a corporate entity, JPMorgan Transut Fund Administration (Ireland) Limited will require Form D to be completed for the settlor.

Where the Trustee is itself a Designated Body;

A letter from the Trustee in the format provided at D3 above confirming that the Trustee has verified the identity of both the settlor and the beneficiaries of the Trust.

16

FORM F

> WHERE THE SUBSCRIBER IS A PARTNERSHIP OR AN LLC

This section must be completed and the required documents provided by every partnership subscribing for shares in the fund. The General Partner/ Managing Member of the Subscriber must complete this section F1 and provide the documents listed at F2 and either F3 or F4 below.

I/We, the General Partner/Managing Member of the above named subscriber, hereby declare that the subscriber is a Partnership/Limited Liability Company authorised under the Partnership Agreement/ LLC Agreement dated the _____ (date) in _____ (country) with the power to make this subscription. I/We further declare that the subscription is being made only on behalf of the Partnership/Limited Liability Company and that the following persons are all Directors of the General Partner/ Managing Member:

(1)      Name _____

Residential Address _____

Business Address _____

Occupation _____

Date of Birth _____


(2)      Name _____

Residential Address _____

Business Address _____

Occupation _____

Date of Birth _____


(3)      Name _____

Residential Address _____

Business Address _____

Occupation _____

Date of Birth _____

If there are further directors, please list details on a separate page

I/We further agree to notify the Administrator of the Fund of any changes in partners/Members arising whilst the Subscriber maintains an investment in the Fund.

IMPORTANT: The following documentation must be provided:

☐ Certified copy of Certificate of Incorporation for the General Partner/Managing Member

      ☐       Certified copy of the Partnership Agreement/LLC Agreement or equivalent.

      ☐       Copy of the authorised signatory list of the General Partner/ Managing Member.

☐ Certified copy of certificate of Good Standing from Registrar of Companies of the General Partner/Managing Member;

☐ Certified copy of Memorandum and Articles of Association of the General Partner/Managing Member;

☐ Certified list of authorised signatories

☐ Documents listed at C3 above for each director of the General Partner/Managing Member

☐ Documents listed at C3 above for each person authorised to give instructions in respect of the investment

☐ Copy of a list of names and addresses, occupations and dates of birth of shareholders who hold 10% or more of the interests issued by the Subscriber.

☐ a Letter of Introduction of the General Partner/Managing Member from a Designated Body in the format detailed at C2 above confirming the names and addresses of the Directors of the General Partner/Managing Member.

If a partner/member is a corporate entity, JPMorgan Transat Fund Administration (Ireland) Limited will require the identification documents listed in Form D above.

FORM G

| WHERE THE SUBSCRIBER IS A COLLECTIVE INVESTMENT SCHEME |
|---|

Where the Subscriber is a Collective Investment Scheme the documents listed at G1 below must be provided, and complete G2 or G3 below:

☐   Certified Copy Prospectus/Offering Document

☐   Certified Copy Certificate of Incorporation/Formation

☐   Certified Copy Certificate of Registration/Authorisation as a collective investment scheme in its home jurisdiction

List of the Directors/General Partner of the Subscriber:

(1)   Name _____

Residential Address _____

Business Address _____

Occupation _____

Date of Birth _____


(2)   Name _____

Residential Address _____

Business Address _____

Occupation _____

Date of Birth _____


(3)   Name _____

Residential Address _____

Business Address _____

19

Occupation      _____

Date of Birth      _____

If there are further directors, please list details on a separate page

And provide

☐ Certified copy documents as required at C3 above for each Director

I/We further agree to notify the Administrator of the Fund of any changes in directors/partners arising whilst the Subscriber maintains an investment in the Fund.

☐      a Letter of Introduction of the Subscriber from a Designated Body in the following format:

| DESIGNATED BODIES DECLARATION | |
| --- | --- |
| WHERE THE SUBSCRIBER IS A COLLECTIVE INVESTMENT SCHEME | MUST BE ON HEADED PAPER OF THE DESIGNATED BODY |

To: JPMorgan Tranaut Fund Administration (Ireland) Limited
Tranaut House
Marina Village
Malahide
Co. Dublin
Ireland

Re Subscription into  [    ]  *(name of fund)* for value date;  [    ]  *(effective subscription date)*

Dear Sirs

I/We declare

(i) that I am/we are licensed as _____

(description) by the _____ (regulatory body and

20

address) under the laws of _____ (country) and that our registered office

is located at _____

(ii) that we are subject to regulation in _____(country) the purpose of which is to combat

and prevent money laundering

(iii)that we have been appointed _____ (description) ,of

_____ (subscriber name) a _____ (type of

collective investment scheme) established and regulated pursuant to the laws of

_____ (jurisdiction).

(iv) that we have identified the investors in the Subscriber as required by applicable law and we will

retain evidence of the verification process of my/our clients for at least 5 years after

_____ (subscriber name) have redeemed their holding in the

Fund and

(v) that we will make available such evidence of verification of identity to the Fund, the Administrator or

as may be required by any law enforcement or regulatory authority.

(vi) that we have to the best of our knowledge and ability, confirmed that none of persons for whom we

are acting as nominee is named on the lists of prohibited countries, territories, entities and individuals

maintained by the US Treasury Department's Office of Foreign Assets Control and the Commission of the

European Union.


Yours truly

_____
Authorised Signatory

21

CONCORD MANAGEMENT, LLC
220 WHITE PLAINS ROAD
TARRYTOWN, NEW YORK 10591
Phone 914 333-0660
Facsimile 914 333-0421

## FACSIMILE TRANSMITTAL SHEET

| TO:<br>Shareholder Services | FROM:<br>Michael Matlin |
|---|---|
| COMPANY:<br>JP Morgan Tranaut | DATE:<br>31/03/06 |
| FAX NUMBER:<br>441 292-1970 | TOTAL NO. OF PAGES INCLUDING COVER:<br>67 |
| PHONE NUMBER:<br>441 278-7100 | SENDER'S REFERENCE NUMBER: |
| RE:<br>Bradfield Overseas Holdings LTD | YOUR REFERENCE NUMBER:<br>Highland Credit Strategies Fund, Ltd. |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    PLEASE REPLY    ☐ PLEASE RECYCLE

Dear Sirs

Please find attached Subscription documents duly completed on behalf of Bradfield Overseas Holdings Ltd. in the Highland Credit Strategies Fund, Ltd.
Also attached are copies of the following AML supporting documents:

- Certificate of Incorporation
- Memorandum of Association
- Certificate of Good Standing
- Authorised Signatory List
- Proof of Identity of two directors
- Proof of Residence of two directors

Please provide NAV's, Percentage Changes and total Market Values on a monthly basis or for period as published.

All correspondence regarding the above investment should be addressed to:

Concord Management LLC
Attn. Michael Matlin
220 White Plains Road
Tarrytown, NY 10591, USA
Tel. 1-914-333-0660
Fax 1-914-333-0421
Email: matlinm@concord-management.com

Kind regards,

Michael Matlin

## HIGHLAND CREDIT STRATEGIES FUND, LTD.
### (a Bermuda Exempted Mutual Fund Company)

### SUBSCRIPTION AGREEMENT

JPMorgan Tranaut Fund Administration Limited
Magnolia House Building
1ˢᵗ Floor
119 Front Street
Hamilton HM 12
Bermuda

Ladies and Gentlemen:

You have informed the undersigned that Highland Credit Strategies Fund, Ltd, a Bermuda exempted mutual fund company (the "Fund"), has been formed and will be operated in accordance with its Memorandum of Association and Bye-laws (the "Governing Documents"). Highland Capital Management, L.P., a Delaware limited partnership, is the Fund's investment manager (the "Investment Manager") and will provide management and certain administrative services to the Fund and will source, select, determine investments of and monitor investments by the Fund pursuant to an Investment Management Agreement between the Fund and the Investment Manager. The Fund will invest substantially all of its assets in Highland Credit Strategies Master Fund, L.P., a Bermuda exempted limited partnership (the "Master Fund"), which will make investments as described in the Memorandum. JPMorgan Tranaut Fund Administration Limited, a Bermuda exempted company is the administrator of the Fund (the "Administrator") and will provide corporate secretarial, administrative and accounting services to the Fund. The undersigned hereby acknowledges receiving a copy of the Confidential Private Placement Memorandum of the Fund, dated August 16, 2005, together with any and all attachments and supplements thereto (collectively, the "Memorandum").

### 1. Subscription.

(a)     Subject to the terms and conditions of this Subscription Agreement (the "Agreement"), the undersigned hereby tenders a subscription in the amount set forth on the signature page hereto or such lesser amount as the Investment Manager shall choose to accept pursuant to Section 2(a) below (the "Subscription") for non-voting, redeemable, participating shares of par value US$0.001 each in the Fund (the "Shares").

(b)     The Subscription shall be payable in full upon acceptance of this Agreement by the Investment Manager.

### 2. Acceptance of Agreement; Obligations Under Governing Documents. It is
understood and agreed that this Agreement is made subject to the following terms and conditions:

(a)     The Investment Manager shall have the right to accept or reject this Agreement and shall have the right to accept or reject all or part of the Subscription in the Investment Manager's sole and absolute discretion, and this Agreement and the Subscription shall be deemed to be accepted by the Investment Manager only when the undersigned has been admitted into the Fund as a

shareholder (a "Shareholder") by enrollment as a Shareholder in the books and records of the Fund. If the Investment Manager chooses to accept only part of the Subscription amount, then the Investment Manager shall be authorized to revise the amount indicated as the Subscription on the undersigned's signature page to this Agreement and shall notify the undersigned in writing of such revision promptly after the Closing (the amount as so revised shall thereafter be the undersigned's Subscription for all purposes hereof).

(b)    If the undersigned becomes a Shareholder as provided for herein, the undersigned agrees to be bound by all the terms and provisions of the Governing Documents and to perform all obligations therein imposed upon a Shareholder with respect to the undersigned's Shares.

(c)    The undersigned understands that the undersigned's Shares will not be evidenced by a certificate subject to Article 8 of the Uniform Commercial Code.

### 3.   Closing; Conditions to Closing.

(a)    **Time and Place of Closing.** The closing of the sale and purchase of the undersigned's Shares and admission as a Shareholder of the Fund (the "Closing") shall take place at the offices of the Fund located JPMorgan Tranaut Fund Administration Limited, Magnolia House Building, 1ˢᵗ Floor, 119 Front Street, Hamilton HM 12, Bermuda or at such other place and on such date as shall be selected by the Investment Manager (the "Closing Date")

(b)    **Fund's Conditions to Closing.** The Fund's obligations hereunder are subject to acceptance by the Investment Manager of the undersigned's Subscription and to the fulfillment, prior to or at the Closing, of each of the following conditions:

(1)    **Representations and Warranties.** The representations and warranties of the undersigned contained in this Agreement and in the attached Confidential Investor Questionnaire shall be true and correct in all respects at the Closing.

(2)    **Proceedings and Documents.** All proceedings in connection with the transactions contemplated hereby and all documents and instruments incident to such transactions shall be satisfactory in substance and form to the Fund, and the Fund shall have received all such counterpart originals or certified or other copies of such documents as the Fund may reasonably request.

### 4.   Representations and Warranties by the Investment Manager. The Investment Manager represents, warrants and agrees as follows:

(a)    **Organization and Standing of the Fund, etc.** The Fund is duly and validly formed and validly existing as an exempted mutual fund under the laws of Bermuda and has all requisite power and authority under the Governing Documents and such laws to conduct its business as described in the Governing Documents.

(b)    **Compliance with Other Instruments, etc.** The Fund is not in violation of any term of the Governing Documents or this Agreement nor is in material violation of any term of any other mortgage, indenture, contract, agreement, instrument, judgment, decree or order that is applicable to it or to which it is bound.

5. **Representations and Warranties of the Undersigned**. The undersigned understands that the Shares are being sold in reliance upon the exemptions provided in the Securities Act of 1933, as amended (the "Securities Act"), and Regulation D thereunder, for transactions involving limited offers and sales, and the undersigned, for the undersigned and for the undersigned's heirs, personal representatives, successors and assigns, makes the following representations, declarations and warranties with the intent that the same may be relied upon in determining the suitability of the undersigned as an investor in the Fund. The following representations, warranties and agreements shall survive the Closing Date applicable to the undersigned. The undersigned hereby represents and warrants to the Investment Manager and to the Fund as follows:

(a)     The undersigned has received, read carefully and understands the Memorandum, the Governing Documents, this Agreement and all attachments hereto and thereto and has consulted with the undersigned's own attorney, accountant or investment advisor with respect to the investment contemplated hereby and its suitability for the undersigned. Any special acknowledgment set forth below with respect to any statement contained in the Memorandum, the Governing Documents or this Agreement shall not be deemed to limit the generality of this representation and warranty.

(b)     The Fund has made available to the undersigned, during the course of this transaction and prior to the purchase of any of the Shares, the opportunity to ask questions of and receive answers from the Investment Manager or any of its principals concerning the terms and conditions of the offering described in the Memorandum, and to obtain any additional information necessary to verify the information contained in the Memorandum or otherwise relative to the financial data and business of the Fund, to the extent that such parties possess such information or can acquire it without unreasonable effort or expense, and all such questions, if asked, have been answered satisfactorily and all such documents, if examined, have been found to be fully satisfactory to the undersigned.

(c)     The undersigned understands and acknowledges that (i) the undersigned must bear the economic risk of the undersigned's investment in the Shares until the termination of the Fund or until the undersigned withdraws from the Fund or transfers its Shares in accordance with the Governing Documents, (ii) the Shares have not been registered under the Securities Act or any state or foreign securities laws and are being offered and sold in reliance upon exemptions provided in the Securities Act and state and foreign securities laws for transactions not involving any public offering and, therefore, cannot be resold or transferred unless they are subsequently registered under the Securities Act and applicable state laws or unless an exemption from such registration is available; (iii) the undersigned is purchasing the Shares for investment purposes only for the account of the undersigned and not with any view toward a distribution thereof; (iv) the undersigned is investing in the Fund as a common investment vehicle rather than as a means to facilitate separate investment decisions of holders of interests in the undersigned; (v) the undersigned has no contract, undertaking, agreement or arrangement with any person to sell, transfer or pledge to such person or anyone else any of the Shares that the undersigned hereby subscribes to purchase or any part thereof, and the undersigned has no present plans to enter into any such contract, undertaking, agreement or arrangement; (vi) the Shares cannot be sold or transferred without the prior written consent of the Investment Manager, which may be withheld in its sole discretion and will be withheld if transfer could cause the Fund to become subject to regulation under United States federal law as an investment company or would subject the Fund to adverse tax consequences; (vii) there will be no public market for the Shares; (viii) any disposition of the Shares may result in unfavorable tax consequences to the undersigned; (ix) the Fund does not have any obligation or intention to register the Shares for sale under the Securities Act, any state or foreign securities laws or of supplying the information which may be necessary to enable the undersigned to sell Shares; (x) the undersigned has no right to require the registration of the Shares under the Securities Act or state or foreign securities laws or other applicable securities regulations; (xi) the undersigned has been advised to consult his, her or its own attorney, accountant or investment advisor with respect to the terms of the Governing Documents and this

Agreement; and (xii) Skadden, Arps, Slate, Meagher & Flom LLP acts as special United States counsel to the Fund and the Investment Manager and no attorney-client relationship exists with any other person by virtue of such person's making an investment in the Fund.

(d)  The undersigned is aware and acknowledges that (i) the Fund has only a limited operating history; (ii) an investment in the Shares involves a substantial degree of risk of loss of the undersigned's entire investment, and there is no assurance of any income from such investment; (iii) any federal and/or state or foreign jurisdiction income tax benefits that may be available to the undersigned may be lost through the adoption of new laws or regulations or changes to existing laws and regulations or changes in the interpretation of existing laws and regulations; (iv) the undersigned, in making its investment, is relying solely upon the advice of the undersigned's personal tax advisor with respect to the tax aspects of an investment in the Fund; and (v) because there are substantial restrictions on the transferability of the Shares it may not be possible for the undersigned to liquidate its investment readily in any event, including in case of an emergency.

(e)  The statements as to net worth and annual income or assets of the undersigned and the other information set forth in the attached Confidential Investor Questionnaire is true, correct and complete in all material respects.

(f)  The undersigned, (if a natural person), is at least 21 years of age and the undersigned has adequate means of providing for all of his or her current and foreseeable needs and personal contingencies and has no need for liquidity in this investment, and if the undersigned is an unincorporated association, all of its members are at least 21 years of age.

(g)  The undersigned has evaluated the risks of investing in the Shares, and has determined that the Shares are a suitable investment for the undersigned. The undersigned can bear the economic risk of this investment and can afford a complete loss of its investment. In evaluating the suitability of an investment in the Shares, the undersigned has not relied upon any representations or other information (whether oral or written) other than the information set forth in the Memorandum and information obtained pursuant to independent investigations made by the undersigned or representative(s) of the undersigned.

(h)  The undersigned is knowledgeable and experienced in evaluating investments and experienced in financial and business matters and is capable of evaluating the merits and risks of investing in the Shares. The aggregate amount of the investments of the undersigned in, and the undersigned's commitments to, all similar investments that are illiquid is reasonable in relation to the undersigned's net worth.

(i)  The address set forth in the Investor Contact Information is the undersigned's true and correct residence, if an individual, or principal place of business, if an entity other than an individual.

(j)  The undersigned (if an entity) is duly authorized and qualified to become a Shareholder in, and authorized to subscribe to Shares of the Fund, and the person signing this Agreement on behalf of such entity has been duly authorized by such entity to do so.

(k)  Any information that the undersigned has heretofore furnished to the Fund with respect to the undersigned is correct and complete as of the date of this Agreement and if there should be any material change in such information prior to the undersigned's purchase of Shares, the undersigned will immediately furnish such revised or corrected information to the Fund.

(l)     The representations, warranties, agreements, undertakings and acknowledgments made by the undersigned in this Agreement, the Confidential Investor Questionnaire and the other subscription materials are made with the intent that they be relied upon by the Fund and the Investment Manager in determining his, her or its suitability as a purchaser of the Shares, and shall survive his, her or its purchase. In addition, the undersigned undertakes to notify the Fund immediately of any change in any representation, warranty or other information relating to the undersigned set forth herein.

(m)     The undersigned, if it is a corporation, limited liability company, trust, partnership or other entity, is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, was formed prior to, and not for the purpose of, investing in the Shares and the execution, delivery and performance by it of this Agreement and the Governing Documents are within its powers, have been duly authorized by all necessary corporate or other action on its behalf, require no action by or in respect of, or filing with, any governmental body, agency or official (except as disclosed in writing to the Investment Manager), and do not and will not contravene, or constitute a default under any provision of applicable law or regulation or of its certificate of incorporation or other comparable organizational documents or any agreement, judgment, injunction, order, decree or other instrument to which the undersigned is a party or by which the undersigned or any of the undersigned's properties is bound. This Agreement constitutes a valid and binding agreement of the undersigned in accordance with its terms.

(n)     If the undersigned is a natural person, the execution, delivery and performance by the undersigned of this Agreement and the Governing Documents are within the undersigned's legal right, power and capacity, require no action by or in respect of, or filing with, any governmental body, agency or official (except as disclosed in writing to the Investment Manager), and do not and will not contravene, or constitute a default under, any provision of applicable law or regulation or of any agreement, judgment, injunction, order, decree or other instrument to which the undersigned is party or by which the undersigned or any of his or her properties is bound. This Agreement constitutes a valid and binding agreement of the undersigned, enforceable against the undersigned in accordance with its terms.

(o)     The undersigned ____ is / Y.N. is not (please initial the correct space) a United States citizen if an individual, or, if an entity, ____ is / Y.N. is not organized under the laws of the United States or a state thereof, or ____ is / Y.N is not otherwise a U.S. Person (as defined below) or as otherwise defined in Rule 902(b) under the Securities Act. For purposes of this representation, a "U.S. Person" is (i) a natural person who is a citizen of or resident in the United States; (ii) a partnership or corporation organized or incorporated under the laws of the United States; (iii) an estate of which any executor or administrator is a U.S. Person; (iv) a trust of which any trustee is a U.S. Person; (v) an agency or branch of a foreign entity located in the United States; (vi) a non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. Person; (vii) a discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States, or (viii) a partnership or corporation if (A) organized or incorporated under the laws of any foreign jurisdiction; and (B) formed by one or more of the above and/or one or more natural persons resident in the United States principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a)) who are not natural persons, estates or trusts.

(p)     By purchase of Shares of the Fund, the undersigned represents to the Investment Manager and the Fund that the undersigned has neither acquired nor will transfer or assign any Shares the undersigned purchases (or any interest therein) to be marketed on or through an

"established securities market" within the meaning of section 7704(b)(1) of the Internal Revenue Code of 1986, as amended (the "Code"), including, without limitation, an over-the-counter-market or an interdealer quotation system that regularly disseminates firm buy or sell quotations. Further, the undersigned agrees that if it determines to transfer or assign any of its Shares pursuant to the provisions of the Governing Documents it will cause its proposed transferee to agree to the transfer restrictions set forth therein and to make the representations set forth above.

(q)     The undersigned (if an entity) is not subject to the attribution rules under Section 3(c)(1) of the United States Investment Company Act of 1940, as amended (the "1940 Act"), in a way that would result in more than one person being deemed the beneficial owner of the undersigned's Shares, or, alternatively, the undersigned will not initially beneficially own 10% or more of the outstanding Shares of the Fund.

(r)     The undersigned _____ is / V.N. is not (please initial the correct space) purchasing Shares in the Fund with funds that constitute, directly or indirectly, the assets of an employee benefit plan[1] subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or a plan[2] subject to Section 4975 of the Code.

(s)     (initial)     V.N.          I/We confirm that no advice or other discretionary service has been provided by JPMorgan Chase Bank, N.A. or any of its subsidiaries or affiliates in the decision to invest in the shares of the Fund. None of JPMorgan Chase Bank, N.A., its subsidiaries or affiliates act as investment or other advisor to the undersigned.

(t)     No representations or warranties have been made to the undersigned by the Fund, the Investment Manager, any partner or member of the Investment Manager, or any agent of said persons or entities, other than as set forth herein.

(u)     The undersigned acknowledges receipt of Part II of Form ADV attached to this booklet as Annex C (the "ADV") or a disclosure statement containing the equivalent information as set forth in the APV. If the appropriate disclosure statement was not delivered to the undersigned at least 48 hours prior to the undersigned entering into any written or oral advisory contract with this investment adviser, then the undersigned has the right to terminate the contract without penalty within five business days after entering into the contract. For the purposes of this provision, a contract is considered entered into when all parties to the contract have signed the contract, or in the case of an oral contract otherwise signified their acceptance, any other provisions of this contract notwithstanding.

(v)     The undersigned represents and warrants that it is either (i) (a) an "accredited investor" as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act and (b) a "qualified purchaser" as such term is defined in the 1940 Act (and thus a "qualified client" as such term is defined in the Investment Advisers Act of 1940, as amended) or (ii) not a U.S. Person (as defined in Rule 902(b) under the Securities Act). If you are a U.S. Person, to the extent

---

[1]     Generally, such a plan would include any plan, fund or program that is established or maintained for the purpose of providing medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, prepaid legal services, holiday or severance benefits or retirement income, or income deferred to periods extending to the termination of employment or beyond.

[2]     Generally, such a plan would include a trust described in Section 401(a) of the Code or a plan described in Section 403(a) of the Code, which trust or plan is exempt from tax under Section 501(a) of the Code, an individual retirement account ("IRA") described in Section 408(a) of the Code or an individual retirement annuity described in Section 408(b) of the Code.

that any look-through rules apply to you under the Securities Act or the 1940 Act, each person or entity who holds an equity interest in you is, and each person or entity who at any time in the future holds an equity interest in you will be, an "accredited investor" and a "qualified purchaser" as so defined. In addition, you meet any additional or different suitability standards imposed by the securities and similar laws of the state or foreign jurisdiction of your principal place of business or domicile.

        (w)     The undersigned acknowledges that the Fund and the Investment Manager seek to comply with all applicable laws concerning money laundering and related activities. In addition:

        1.     The undersigned represents and warrants that it is not:

        (a)     identified on the U.S. Department of Treasury Office of Foreign Assets Control ("OFAC") list of Specially Designated Nationals and Blocked Persons (the "SDN List") codified at 31 CFR Ch. V Annex A as amended from time to time;

        (b)     owned or controlled by or acting on behalf of any person or entity listed on the SDN List;

        (c)     the target of any sanction, regulation, or law promulgated by OFAC or any other U.S. governmental entity (such sanctions, regulations and laws, together with any supplement or amendment thereto, the "U.S. Sanctions Laws") such that the entry into this Agreement or the performance of any of the transactions contemplated hereby would contravene such U.S. Sanctions Laws; or

        (d)     owned or controlled by or acting on behalf of any person or entity that is the target of any U.S. Sanctions Laws such that the entry into this Agreement or the performance of any of the transactions contemplated hereby would contravene such U.S. Sanctions Laws.

        2.     The undersigned understands, acknowledges, represents and agrees:

        (a)     that the acceptance of this Agreement and the other subscription materials, together with the appropriate remittance, will not breach any applicable money laundering or related rules or regulations (including, without limitation, any statutes, rules or regulations in effect under the laws of the United States pertaining to prohibitions on money laundering or to transacting business or dealing in property that may be blocked or may belong to Specially Designated Nationals as those terms are used by the OFAC);

        (b)     to promptly provide to the Fund and the Investment Manager documentation verifying the undersigned's identity, as well as the identity of any of the undersigned's legal or beneficial owners or related parties or affiliates;

        (c)     that due to money laundering requirements within their respective jurisdictions (which requirements are in effect at the time this Agreement and the other subscription materials are submitted to the Fund or the Administrator or which become effective at any future time), the Fund, the Investment Manager or the Administrator may require further evidence the undersigned's identity before this Agreement and the other subscription materials can be processed, and the Fund, the Investment Manager or the Administrator may be required to take such other actions as may be necessary for the Fund to comply with such money laundering regulations;

7

(d)    that the undersigned hereby consents, to the extent necessary for compliance with such money laundering regulations, to disclosure to relevant third parties of information provided pursuant to this Section 5(v) to hold harmless and indemnify each of the Fund, the Investment Manager and their respective designees against any losses arising from the failure to process the undersigned's application if it does not provide such requested information.

3.    The undersigned understands, acknowledges, represents and agrees that many jurisdictions are in the process of changing or creating anti money laundering, embargo and trade sanctions, or similar laws, regulations, requirements (whether or not with force of law) or regulatory policies and many financial intermediaries are in the process of changing or creating responsive disclosure and compliance policies (collectively "Requirements") and the Fund, the Investment Manager or the Administrator could be requested or required to obtain certain assurances from the undersigned, disclose information pertaining to the undersigned to governmental, regulatory or other authorities or to financial intermediaries or engage in due diligence or take other related actions in the future.

4.    The undersigned understands, acknowledges, represents and agrees that it is the Fund's and Investment Manager's policy to comply with Requirements to which it is or may become subject and to interpret them broadly in favor of disclosure.

5.    The undersigned hereby agrees, and by reason of owning an Interest will be deemed to have agreed, to provide additional information or take such other actions as may be necessary or advisable for the Fund (in the Investment Manager's reasonable judgment) to comply with any Requirements, related legal process or appropriate requests (whether formal or informal) or otherwise.

6.    The undersigned hereby consents, and by reason of owning Shares will be deemed to have consented, to disclosure by the Fund, the Investment Manager and the Administrator, and each of their respective agents, to relevant third parties of information pertaining to the undersigned in respect of Requirements or information requests related thereto.

(x)    The undersigned hereby designates and appoints the Investment Manager with full power of substitution, as its true and lawful proxy and attorney-in-fact for the purpose of voting the Shares subscribed for herein or otherwise acquired as said proxy may determine on any and all matters which may arise at any meeting of shareholders and upon which such Shares could be voted by Shareholders present in person at such meeting. This proxy may be revoked by the owner of record of the Shares hereby subscribed for, either personally or by presentation of a subsequently executed proxy at any meeting of Shareholders, or by written notice to the Fund, at the above address (or such other address as the Fund or the Administrator shall furnish in writing to a Shareholder) received prior to any such meeting.

(y)    The Administrator, the Fund, and the Investment Manager are each hereby authorized and instructed to accept and execute any instructions in respect of the Shares to which this Agreement relates given by the undersigned in written form or by facsimile. If instructions are given by the undersigned by facsimile, the undersigned undertakes to send the original letter of instructions to the Administrator, the Fund, and the Investment Manager and agrees to keep each of them indemnified against any loss of any nature whatsoever arising to any of them as a result of any of them acting upon facsimile instructions. The Administrator, the Fund, and the Investment Manager may rely conclusively upon and shall incur no liability in respect of any action take upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

8

(z)      If the undersigned is acting as trustee, agent, representative or nominee for a undersigned (a "Beneficial Owner"), the undersigned understands and acknowledges that the representations, warranties and agreements made herein are made by the undersigned (A) with respect to the undersigned and (B) with respect to the Beneficial Owner. The undersigned further represents and warrants that it has all requisite power and authority from said Beneficial Owner to execute and perform the obligations under this Agreement. The undersigned also agrees to indemnify the Fund, the Investment Manager and the Administrator and their directors, members, partners, officers and agents for any and all costs, fees and expenses (including legal fees and disbursements) in connection with any damages resulting from the undersigned's misrepresentation or misstatement contained herein, or the assertion of the undersigned's lack of proper authorization from the Beneficial Owner to enter into this Agreement or perform the obligations hereof.

(aa)      The undersigned acknowledges that the Fund and/or the Investment Manager may enter into agreements with certain Shareholders that permit such Shareholders to invest in the Fund on terms different, and in some circumstances more favorable, than those terms applicable to the undersigned's investment in the Fund.

## 6.   Power of Attorney.

(a)      By executing this Agreement, the undersigned is hereby granting a power of attorney, making, constituting and appointing the Investment Manager as the undersigned's attorney-in-fact, with power and authority to act in the undersigned's name and on the undersigned's behalf to execute, acknowledge and swear to the execution, acknowledgment and filing of the following documents relating to the Fund:

(1)      any instrument, certificate or document that may be required to be filed by the Fund under the laws of any state or United States federal or foreign government or agency, or that the Investment Manager deems advisable to file;

(2)      any instrument or document that may be required to effect the continuation of the Fund or the dissolution, termination and/or liquidation of the Fund (provided such continuation or dissolution, termination and/or liquidation are in accordance with the terms of the Governing Documents);

(3)      all certificates and other instruments that the Fund or the Investment Manager determines to be required to receive and pay over to the Fund on behalf of the undersigned all funds received hereunder and to issue the Shares;

(4)      all certificates and other instruments that the Fund or the Investment Manager determines to be appropriate to form, qualify or continue the Fund as an exempted mutual fund company in Bermuda and all other jurisdictions in which the Fund conducts or plans to conduct business;

(5)      all instruments that the Fund or the General Partner determines to be appropriate to reflect any amendment to the Governing Documents to the extent permitted by the Governing Documents (i) to satisfy any requirements, conditions, guidelines or opinions contained in any opinion, directive, order, ruling or regulation of the United States Securities and Exchange Commission, the Internal Revenue Service, or any other U.S. federal or state or non-U.S. governmental agency, or in any U.S. federal or state or non-U.S. statute, compliance with which the Fund or the Investment Manager deems in good faith to be in the best interest of the

9

Fund; provided that the execution of such instrument is not detrimental in any material respect to the Shareholders, or (ii) to change the name of the Fund;

(6)    all amendments to the Governing Documents duly approved and adopted;

(7)    certificates of assumed name and such other certificates and instruments as may be necessary under the fictitious or assumed name statutes from time to time in effect in all jurisdictions in which the Fund conducts or plans to conduct business; and

(8)    any other instruments determined by the Fund or the Investment Manager to be necessary in connection with the proper conduct of the business of the Fund and that do not adversely affect the interests of any Shareholder.

This power of attorney shall be deemed to be coupled with an interest, shall be irrevocable, shall survive and not be affected by the dissolution, bankruptcy, incompetence or legal disability of the undersigned and shall extend to the successors and assigns of the undersigned. This power of attorney may be exercised by such attorney-in-fact and agent for all Shareholders (or any of them) by a single signature of the Investment Manager acting as attorney-in-fact with or without listing all of the Shareholders executing an instrument. Any person dealing with the Fund may conclusively presume and rely upon the fact that any instrument referred to above, executed by such attorney-in-fact and agent, is authorized and binding, without further inquiry. If required, each Shareholder shall execute and deliver to the Investment Manager, within five Business Days after receipt of a request therefor, such further designations, powers of attorney or other instruments as the Investment Manager shall reasonably determine to be necessary for the purposes hereof consistent with the provisions of the Governing Documents.

(b)    The special power of attorney being granted hereby by each Shareholder:

(1)    is a special power of attorney coupled with an interest, is irrevocable and shall survive the death or legal incapacity of the undersigned; and

(2)    shall survive an assignment by the undersigned of his, her or its Shares except that, where the transfer of all the Shares owned by a Shareholder has been approved by the Investment Manager, the special power of attorney shall survive such transfer for the sole purpose of enabling the Investment Manager to execute, acknowledge and file any instrument or document necessary to effect such substitution.

(c)    In the event of any conflict between the Governing Documents and any document filed pursuant to this power of attorney, the Governing Documents shall control.

(d)    The exercise of this power of attorney shall be subject to the Investment Manager's responsibility to obtain the approval of the Shareholders on such matters as required by the Governing Documents or by applicable law.

7.    **Assignment; Transferability.** This Agreement or any interest herein may not be assigned by either party without the written consent of the other party. The undersigned further agrees that the assignment and transferability of the Shares acquired pursuant hereto shall be made only in accordance with the terms of the Governing Documents.

10

8.   **Time; No Revocation.**  Time shall be of the essence in this Agreement.  The undersigned agrees that this Agreement and any agreement of the undersigned made hereunder is irrevocable, and that this Agreement shall survive the death or legal incapacity of the undersigned.

9.   **Notices.**  All notices or other communications given or made hereunder shall be in writing and shall be deemed effectively given upon personal delivery or upon deposit in any United States mail box, postage prepaid, deposit with an overnight courier, or transmission by facsimile or electronic mail to the undersigned at the address set forth in the undersigned's Contact Information attached hereto and to the Fund JPMorgan Tranaut Fund Administration Limited, Magnolia House Building, 1st Floor, 119 Front Street, Hamilton HM 12, Bermuda or at such other place as the Fund may designate by written notice to the undersigned.

10.  **Survival of Agreements, Representations and Warranties, etc.**  All agreements, representations and warranties contained herein or made in writing by or on behalf of the Fund in connection with the transactions contemplated by this Agreement shall survive the execution and delivery of this Agreement, any investigation at any time made by the undersigned or on the undersigned's behalf, and the sale and purchase of the undersigned's Shares in the Fund and payment therefor.

11.  **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which taken together shall constitute one agreement.

12.  **Governing Law.**  This Agreement shall be governed by and construed under the laws of Bermuda.

13.  **Administrative Matters.**  The undersigned represents that the following individual or individuals are authorized to act on behalf of the undersigned to give and receive instructions between the Fund (or its representatives, including the Fund's administrator) and the undersigned.  Such individuals are the only persons so authorized until further written notice, signed by one or more of such individuals, to JPMorgan Tranaut Fund Administration Limited, Magnolia House Building, 1st Floor, 119 Front Street, Hamilton HM 12, Bermuda.

| Name | Specimen Signature |
|---|---|
| VILITA NIKULINA | See Attached Signatory List |
| GOTCHA DJABIDZE | See Attached Signatory List |

14.   **Wire Information.**  The undersigned agrees that all or any funds payable to the undersigned (including redemption proceeds) may be wire transferred to the undersigned in accordance with the following instructions, until further written notice, signed by one or more of the individuals authorized to act on behalf of the undersigned under Section 14 above, to JPMorgan Tranaut Fund Administration Limited, Magnolia House Building, 1st Floor, 119 Front Street, Hamilton HM 12, Bermuda.

# LIST OF AUTHORIZED SIGNATORIES

Company Name: BRADFIELD OVERSEAS HOLDINGS LTD

| Date of Appointment | Name and Address | Office Held | Specimen Signature |
|---|---|---|---|
| 14 August 2003 | Vilija Nikulina<br>C/o Shopeno3-22<br>2000 Vilnius<br>Lithuania | Director | |
| 15 June 2004 | Gotcha Djahidze<br>Josefstädter Str. 43-45/1137<br>A-1080 Vienna<br>Austria | Director | |



Signed(or sealed) this day in my presence by
Vilija Nikulina Djahidze
Who is/are personally known to me. In testimony where
of I have hereto set my hand and Official Seal this
17 Day of October 2005

Fees £ 40

ALKIVIADES E. TSAKANIAS
Certifying Officer

Bank Name:
Bank Address:
ABA or CHIPS No.:
Account Name:
Account No.:
For Further credit:

} SEE ATTACHED
BANK DETAILS
SHEET

(a)  Name and Address of Financial Institution Wiring/Paying Subscription Monies:

AMSTERDAM TRADE BANK N.V.    - HERENGRACHT 475
1017 BS AMSTERDAM, THE NETHERLANDS

(b)  Name and Number of Account at Financial Institution being debited:

AMSTERDAM TRADE BANK N.V.   -  HERENGRACHT 475
1017 BS AMSTERDAM, THE NETHERLANDS

12

<u>Bank Details</u>

<u>Bradfield Overseas Holdings Ltd</u>

| | |
|---|---|
| **Beneficiary:** | Bradfield Overseas Holdings Ltd |
| **Account #:** | 9001-800893-001 |
| **IBAN:** | IBAN NL08 STOL 0800 8930 01 |
| **Bank:** | Amsterdam Trade bank N.V.,<br>Herengracht 475, 1017 BS Amsterdam,<br>The Netherlands<br>**SWIFT STOLNL2A** |
| **Correspondent Bank:**<br>**Swift:** | **JP MorganChase**<br>**CHASUS33** |
| **Account #:** | 400211408 |

HIGHLAND CREDIT STRATEGIES FUND, LTD.
(a Bermuda Exempted Mutual Fund Company)

SIGNATURE PAGE
TO
SUBSCRIPTION AGREEMENT

Very truly yours,                                          Total Subscription:

BRADFORD OVERSEAS HOLDINGS LTD                 $ 10,000,000
Print Name of Investor(s)

By: _____                    By: _____
        Signature                                      Signature of joint investor or other person
                                                       whose signature is required

VILITA NIKULINA   DIRECTOR                      _____
Print Title (if applicable)                     Print Title (if applicable)

_____                         _____
Social Security Number or Federal Employer      Social Security Number or Federal Employer
Identification Number                           Identification Number (of joint investor)


Please indicate below which Class of Shares you wish to subscribe for:

Class A                          Class B

[X]                              [ ]


Date:   31ST MARCH 2006


13

☐ 016/037                                    31/03 2006 18 08 FAX

**HIGHLAND CREDIT STRATEGIES FUND, LTD.**
**(a Bermuda Exempted Mutual Fund Company)**

**ACCEPTANCE PAGE**
**TO**
**SUBSCRIPTION AGREEMENT**

SUBSCRIPTION ACCEPTED:

☐  IN FULL or for $_____ of:     ☐ Class A Shares
                                           ☐ Class B Shares

**Highland Credit Strategies Fund, Ltd.**
(a Bermuda Exempted Mutual Fund Company)

By:    Highland Capital Management, L.P.,
          its Investment Manager

By:    Strand Advisors, Inc.,
          its general partner

By:    _____
          Name:
          Title:

Date:  _____

14

Please send notices via:  ☒ U.S. Mail  ☒ E-Mail

☒  If the Primary Contact is to be the only recipient of all notices and reports, please check the box at the left and do not repeat the contact information in response to the various questions below.

•  **SECONDARY CONTACT**

Please list additional individual(s) who should receive copies of all notices and reports:

1. Contact Name: _____

Address: _____

_____

_____

Telephone Number: _____ Facsimile Number: _____

E-Mail Address: _____

Please send notices via:  ☐ U.S. Mail  ☐ E-Mail

15